United States District Court
Southern District of Texas
**ENTERED**
October 11, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Mary Ferrel, <br><br> *Plaintiff,* <br><br> v. <br><br> Kilolo Kijakazi, <br> Acting Commissioner of Social Security, <br><br> *Defendant.* | Civil Action No. 4:21-cv-03409 |

## MEMORANDUM AND RECOMMENDATION

This is an appeal from an administrative ruling that denied Plaintiff Mary Ferrel's request for social security benefits, which was referred to the undersigned judge. Dkt. 3. After carefully considering the parties' briefs, the administrative record, and the applicable law, the Court recommends granting Ferrel's Motion for Summary Judgment (Dkt. 12) and denying Defendant Kilolo Kijakazi's Motion for Summary Judgment (Dkt. 13).

## Background

Ferrel filed for social security benefits under Title II, claiming a disability onset date of November 4, 2016. R.128, 272-78. Her application claimed she suffered from diabetes, diabetic neuropathy, fibromyalgia. R.317. Her claim was denied initially and upon reconsideration on August 17, 2017

and November 30, 2017, respectively. R.155-59, 163-66. After a hearing, the administrative law judge (ALJ) issued an adverse decision, denying Ferrel benefits. *See* R.125-41.

Ferrel appealed the ALJ's decision, which was subsequently vacated by the Appeals Council on March 18, 2020. R.142-46. The Appeals Council remanded Ferrel's case to the ALJ with instructions to consider Ferrel's medical records from her treating physician, Dr. Ranjit Grewal, and to "[g]ive further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with *specific references to evidence of record* in support of the assessed limitations" in accordance with the agency's regulations. R.144 (emphasis added).

After conducting another hearing, R.72-103, the ALJ issued a second decision finding Ferrel not disabled on November 19, 2020. R.28-38. At the time of the decision, Ferrel was 62-years-old, which the regulations classify as an "advanced age." R.97; *see* 20 C.F.R. § 404, Subpt. P, App'x 2, Rule 201.00(d).

At step one of her analysis, the ALJ again found that Ferrel met the requirements for insurance under the Social Security Act. R.31. Between the first and second hearings, Ferrel had experienced several significant health events, including a diagnosis and treatment for breast cancer and exacerbated mental health issues after her daughter died. *See, e.g.*, R.704-05. Accordingly, at step two, the ALJ found that Ferrel suffered from the impairments present

during the 2018 hearing—trochanteric bursitis of hips, diabetes mellitus, fibromyalgia, inflammatory bowel disease, and neuropathy—as well as the additional severe impairments of stage 1 breast cancer, osteopenia, and anxiety and depression. R.31.

At step three, the ALJ determined that none of these severe impairments met or medically equaled a listed impairment in 20 CFR Part 404, Subpt. P, App'x 1. With regard to Ferrel's mental impairments, the ALJ analyzed Ferrel's anxiety and depression under the "paragraph B" criteria. R.32. In concluding that Ferrel's mental impairments cause only mild or moderate limitations, the ALJ cited two sources in the record: Ferrel's July 2017 and October 2017 administrative function self-reports conducted shortly after her application was filed. R.336-44, 355-63.

The ALJ then determined that Ferrel had a residual functional capacity (RFC) to perform light work, with a number of limitations:

> She can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. The claimant should avoid all exposure to unprotected heights. She can occasionally push, pull, and operate foot controls, bilaterally. Furthermore, she can frequently reach in all directions, including overhead, bilaterally. She can frequently handle and finger bilaterally. The claimant can remember and follow detailed, but not complex instructions. She can perform the tasks assigned, but not at a production rate pace; however, she can meet the end of day work

> goals. The claimant can occasionally adapt to changes in the workplace.

R.33.

In reaching this determination, the ALJ deemed unpersuasive the opinions from two state agency psychological consultants who opined that Ferrel had no medically determinable mental impairments. The ALJ reasoned that these consultants' opinions were rendered before Ferrel's mental health treatment occurred and were thus "out-of-date and inconsistent with the medical evidence in the longitudinal record." R.37. The ALJ also disregarded Dr. Grewal's examination records because they did "not provide a function-by-function assessment" and were allegedly "neither compelling nor conclusive" as a result. *Id.* The ALJ did not identify a mental health expert whose opinions she did find persuasive or on whom she relied. *See* R.33-37. Given this RFC, the ALJ found that Ferrel could hold jobs that were available in the national economy, including her past relevant work as a sales clerk. R.38.

Ferrel unsuccessfully appealed the ALJ's decision to the Social Security Administration's Appeals Council, RR.19-22, which rendered the ALJ's decision ripe for this Court's review. *See* 42 U.S.C. § 405(g); *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) ("[Social Security Administration] regulations provide that, if … the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision.").

## **Standard of Review**

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a scintilla, but it need not be a preponderance.'" *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (quotations omitted). The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

### I. Legal Framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted). Before moving from step three to four, the ALJ determines the claimant's residual functional capacity, which is used to evaluate steps four and five. *Id.* at 776 n.2 (quoting 20 C.F.R. § 404.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* at 776 (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753-54 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.*

## II. The ALJ's determination was not supported by substantial evidence.

Ferrel filed a motion for summary judgment, claiming that the ALJ committed two errors. *See* Dkt. 12. Ferrel argues that (i) the ALJ failed to accurately account for the functional limitations caused by her mental health impairments, and (ii) the ALJ improperly disregarded any evidence of Ferrel's physical limitations that contradicted the RFC determination. *Id.* at 13-22. Because the Court finds that Ferrel's first point of error should be sustained, it need not address Ferrel's other issue.

### A. The ALJ lacked substantial evidence to support her RFC determinations concerning Ferrel's mental limitations.

The ALJ found that Ferrel suffered from severe anxiety and depression, R.32, and determined that such anxiety and depression resulted only in three minor limitations. R.33. In the RFC determination, the ALJ found Ferrel "can remember and follow detailed, but not complex instructions"; "can perform the tasks assigned, but not at a production rate pace"; and "can occasionally adapt to changes in the workplace." R.33.

Ferrel argues that the ALJ erred by imposing her lay opinion about the functional impact of Ferrel's severe depression and anxiety, instead of relying on expert medical opinions. Dkt. 12 at 13-17. Ferrel is correct. The ALJ did not reference any opinions from mental health experts when determining Ferrel's RFC, yet she imposed certain limitations in that RFC. *See* R.33-37.

7

This failure to elicit and rely upon expert medical opinion constituted error, as the objective medical records do not support the ALJ's layperson guesswork about how Ferrel's severe depression and anxiety affected her work abilities. *See Ripley v. Chater*, 67 F.3d 552, 557-58 (5th Cir. 1995). And without medical opinions supporting the ALJ's determination, the record is incomplete, unless the ALJ's decision is "supported by substantial evidence in the existing record." *Id.* at 557. That is not the case here.

    1.    <u>The ALJ did not rely on any medical experts.</u>

Defendant does not dispute that the ALJ formulated her opinion without the assistance of any medical opinion. *See* Dkt. 13 at 4-12. Defendant instead argues that the ALJ was entitled to determine the persuasiveness of the medical opinions available and, in any event, supported her decision with substantial evidence. *Id.* Defendant's response is a non sequitur. It fails to address Ferrel's complaint that the ALJ imposed her lay opinion when formulating her RFC and, in any event, the ALJ failed to meet Defendant's cited regulations with respect to Dr. Grewal.

The ALJ disregarded the adverse mental health opinions from the state psychological consultants because they found that she had "no medically determinable mental impairment" in 2017, years before her mental health treatment began and the corresponding medical records were received by Defendant. R.37; *see also* R.105-13 (Aug. 16, 2017 state consultative

8

determinations), R.115-24 (Nov. 8, 2017 state consultative determination). Ferrel does not take issue with the ALJ's decision to find these consultants unpersuasive. Dkt. 12 at 14. She merely points out that they were the only medical providers about whom the ALJ made a persuasiveness finding pursuant to regulations—and thus they could not have served as a medical source for the ALJ's mental health limitations. *Id.*

The ALJ also rejected evidence from Dr. Grewal—apparently on a categorical basis—because his "exam does not provide a function-by-function assessment; therefore, it is neither compelling nor conclusive of the claimant's abilities related to work." R.37. Dr. Grewal was Ferrel's primary care provider whose records were the subject of the ALJ's review upon remand. While the ALJ was entitled to evaluate Dr. Grewal's persuasiveness, that determination is governed by five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) 'other factors that tend to support or contradict' the opinion. *Shugart v. Kijakazi*, 2022 WL 912777, at *3 (S.D. Tex. Mar. 29, 2022) (citing 20 C.F.R. §§ 404.1520c, 416.920c); *see also* Dkt. 13 at 6 (Defendant's reference to the regulations).

The ALJ did not assess these factors with respect to Dr. Grewal, and instead rejected his examination—presumably including his mental impairment assessment—on other grounds. But the regulations do not contemplate disregarding a medical provider merely because his proffered

9

evidence was not presented in a format that the ALJ preferred. 20 C.F.R. § 404.1520c. The ALJ's stated basis for rejecting Dr. Grewal's assessment was thus erroneous. But because Ferrel did not identify this ground for reversal, the Court considers the ALJ's misstep only insofar as it reflects the ALJ's failure to consider evidence of Ferrel's mental health impairments from a medical expert.

Despite the lack of any medical opinion about how Ferrel's severe anxiety and depression limited her ability to work, the ALJ nonetheless proceeded to formulate Ferrel's RFC. Although the ALJ is tasked with weighing medical opinions and determining a claimant's RFC, *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012), the ALJ "may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on evidence of his or her claimed medical conditions … [and] may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley*, 67 F.3d at 557); *see also Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (ALJs "must be careful not to succumb to the temptation to play doctor," as "lay intuitions about medical phenomena are often wrong") (internal quotation marks and citation omitted).

"[W]hen the ALJ rejects the only medical opinions of record, interprets the raw medical data, and imposes a different RFC, the ALJ has committed

reversible error." *Allen v. Saul*, 2020 WL 5412630, at *7 (S.D. Tex. Sept. 9, 2020) (quoting *Garcia v. Berryhill*, 2018 WL 1513688, at *2 (W.D. Tex. Mar. 27, 2018)). That is analogous to what the ALJ did here.

In the absence of medical opinions, the ALJ should have developed the record and elicited testimony or opinion before drawing conclusions about Ferrel's mental health limitations. *Ripley*, 67 F.3d at 557; *see also Demarcus G. v. Kijakazi*, 2021 WL 6297778, at *5 (N.D. Tex. Dec. 17, 2021) (recommending remand when the ALJ improperly "rejected all the medical expert evidence concerning the effects of Plaintiff's mental impairments and determined Plaintiff's RFC based on his own evaluation of findings from Plaintiff's mental status exams"), *report and recommendation adopted*, 2022 WL 60333 (N.D. Tex. Jan. 5, 2022); *Thornhill v. Colvin*, 2015 WL 232844, at *10 (N.D. Tex. Jan. 16, 2015) (an ALJ cannot "independently decide the effects of Plaintiff's mental impairments on her ability to perform work-related activities … even if the ALJ believes he is simply giving Plaintiff the benefit of the doubt as to what limitations might apply"). Indeed, "[t]he principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." *Olivares v. Berryhill*, 2018 WL 4035990, at *11 (W.D. Tex. Aug. 23, 2018) (quoting *Salmond v. Berryhill*, 892 F.3d 812, 819 (5th Cir. 2018)).

While that obligation to develop record is not absolute, "[i]n a situation such as the present one, where no medical statement has been provided, [the Court's] inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557. Because the record does not contain that substantial evidence—as addressed below— the ALJ's formulation of Ferrel's mental limitations without the assistance of a medical opinion was error. *See Williams*, 355 F. App'x at 831-32 (ALJ committed reversible error by not supporting his finding with evidence, regardless of his entitlement to discount the weight of medical opinions).

>   2. The record did not otherwise support the mental limitations formulated by the ALJ.

To support the RFC's mental limitations, the ALJ provided a cursory summary that cited only a handful of medical records:[1]

> Ms. Ferrel's mental impairments also cause her work-related limitations. She has been diagnosed with an anxiety and depressive disorder, and has complied with treatment (Exhibits 8F/34; 9F/2, 4). She has generally exhibited normal findings with regards to psychiatric examinations, and has been noted as cooperative (Exhibits 3F/8; 11F/42; 14F/91, 101).

---

[1] While the ALJ also analyzed two additional records—Ferrel's 2017 function self-reports—in her step two analysis, the ALJ acknowledged that that analysis was distinct from the RFC determination. R.33. Defendant nevertheless attempts to incorporate that step-two analysis in defense of the ALJ's RFC determination. Dkt. 13 at 9-11. The Court will not presume that the ALJ intended to incorporate her step-two analysis into her RFC analysis when she expressly declined to do so. *See Prudhomme v. Colvin*, 605 F. App'x 250, 254 (5th Cir. 2015) (per curiam) (courts "may affirm only on the grounds that the Commissioner stated for [her] decision").

12

> During her September 2020 mental status examination, however, she exhibited a depressed/anxious mood or affect (Exhibit 14F/17). Despite this, she appeared cooperative, and has linear thought processes, normal speech, intact cognition, and fair insight and judgment.

R.36. But even a deferential review of the cited records demonstrates the lack of substantial evidence supporting the ALJ's RFC. Instead, those records largely predate Ferrel's significant mental health events and therapy—the same developments that led the ALJ to reject evaluations of state psychological consultants as "out-of-date" and thus unpersuasive. *See* R.37.

The cited records also omit the medical provider's main summary and treatment recommendations that either undermine their relevance to Ferrel's mental functioning or imply a more severe mental impairment:

- From November 24-27, 2017, Ferrel sought emergency care and hospitalization for chest pains. A single-word observation showed that Ferrel was "cooperative," but the purpose of her stay was to monitor for "unstable angina, angina, anxiety, pulmonary embolism, atypical chest pain, aortic dissection, pneumonia," and other potential causes for hospitalization—not for depression, anxiety, or other mental conditions. R.455 (Exhibit 3F/8).

- On May 25, 2018, Ferrel visited Dr. Grewal seeking a handicap placard. She also presented with major depressive disorder with current active episode. She was prescribed Duloxetine HCl and Lyrical to treat her disorder. R.562-63 (Exhibit 8F/34-35).

- On July 31, 2019, Ferrel visited her family practice doctor to complain of ear pain and a throat problem. While treating her sinuses—not a mental condition—the provider noted that she had a "normal mood and affect." R.775 (Exhibit 14F/101).

- On September 16, 2019, Ferrel sought treatment for a "sinus problem, headache, and depression." The doctor noted that Ferrel "recently had breast surgery and is currently depressed." R.765 (Exhibit 14F/91).

- On September 26, 2019, Ferrel began seeing a new healthcare provider for "worsening anxiety, depression, social isolation, and insomnia" in the wake of her recent partial mastectomy. She was prescribed Prozac, Vistaril, and Trazodone and ordered to follow up in a month. R.597-98 (Exhibit 9F/4-5).

- On October 21, 2019, Ferrel attended the follow up and reported being less anxious and depressed. She stated she was compliant with medications. R.595 (Exhibit 9F/2).

- On October 31, 2019, Ferrel was observed as having a "normal mood and affect"[2] while seeking treatment for breast cancer. The doctor's notes indicate the purpose of the visit was to discuss the "natural history of breast cancer" as well as the "indications, benefits, side effects, and complications of radiotherapy." R.652 (Exhibit 11F/42).

- On September 17, 2020, Harris Health System performed an initial mental health evaluation of Ferrel, who was referred for counseling by her primary care doctor for grief counseling. R.690 (Exhibit 14F/16). She reported "being overwhelmed with life stressors since August of 2019," including her breast cancer surgery on August 29 and her daughter's death on March 19, 2020. *Id.* Her symptoms included sleeping for more than 12 hours a day, "fluctuating appetite, bouts of fatigue, decrease [in] energy, social withdrawal, sadness, crying spells, [a] sense of helplessness," and other psychological issues. *Id.* Nevertheless, the ALJ was accurate in noting that her attitude during the evaluation was recorded as "cooperative." R.691 (Exhibit 14F/17).

As described, none of these records indicate how Ferrel's mental impairment would limit her ability to work—even if the ALJ had elicited more thorough or contextual information from them. In other words, even if the ALJ

---

[2] While immaterial, the ALJ relied on this visit as evidence that Ferrel was "cooperative."

14

had attempted to account for a severe mental health condition when forming Ferrel's RFC, the ALJ failed to identify any source for her determination that Ferrel "can remember and follow detailed, but not complex instructions," "can perform the tasks assigned, but not at a production rate pace"; and "can occasionally adapt to changes in the workplace." R.33; *see Thornhill*, 2015 WL 232855, at *10 (even limitations that attempt to give claimants the "benefit of the doubt" are flawed if not supported by substantial evidence).

But given that the ALJ included relatively minor limitations in Ferrel's RFC, the Court also notes that ALJ omitted or ignored other significant mental health evidence. Specifically, on June 12, 2020, Ferrel first reported losing her daughter and grieving. R.714. On July 2, 2020, she reported that she had not been taking her medication (including insulin) or watching her diet because her daughter had passed away. R.705. She was counseled but initially refused behavioral therapy. R.706. Not until September 17, 2020 did Ferrel begin counseling. R.692. At that time, the provider diagnosed her with bereavement and depressive disorder and recommended that she continue therapy and psychoeducation "to enhance coping skills." R.691-92.

Altogether, the record evidence does not support the ALJ's RFC determination with respect to Ferrel's mental conditions or otherwise bridge the gap created by the absence of a medical opinion. The ALJ's lay opinion cannot constitute substantial evidence in itself, and without such evidence, her

failure to develop the record was error. *Ripley*, 67 F.3d at 557; *Williams*, 355 F. App'x at 831-32.

### B. The ALJ's failure was prejudicial.

The ALJ's errors require vacatur and remand only if Ferrel's substantial rights have been affected. *Kneeland*, 850 F.3d at 761. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22.

The Fifth Circuit has held that, in the absence of substantial evidence, an ALJ's failure to rely on a medical opinion when resolving a claimant's occupational limitations constitutes reversible error. *Ripley*, 67 F.3d at 557-58; *Williams*, 355 F. App'x at 831-32. Other courts have reached the same conclusion. *See, e.g.*, *Demarcus G.*, 2021 WL 6297778, at *4-6; *Allen*, 2020 WL 5412630, at *7-9; *Beachum v. Berryhill*, 2018 WL 4560214, at *4-5 (W.D. Tex. Sept. 21, 2018); *Fitzpatrick v. Colvin*, 2016 WL 1258477, at *8-9, 12 (N.D. Tex. Mar. 31, 2016); *Thornhill*, 2015 WL 232844, at *10-11; *Brown v. Colvin*, 2015 WL 6501547, at *9-10 (N.D. Tex. Oct. 27, 2015).

Here, the ALJ's deficient findings about the impact of Ferrel's mental impairments were prejudicial. Had the ALJ properly developed the record with additional medical opinions, those opinions could have indicated that Ferrel was more limited in her ability to interact with others, manage oneself,

16

maintain concentration and pace, or adapt to changes, and thus is incapable of performing her past relevant work. That, in turn, could have led the ALJ to conclude that Ferrel's impairments prevent her from performing all but sedentary work, which given her age and lack of transferable skills would classify her as disabled. *See* R.99-100 (testimony by the vocational expert opining that Ferrel would not be able to perform past work if she were more mentally limited); 20 C.F.R. § 404, Subpt. P, App'x 2, Rule 202.06 (grid rule requiring the Commissioner to find a claimant disabled if she is of advanced age with no transferrable skills). Remand is therefore warranted, upon which the ALJ should obtain medical opinion evidence before reevaluating Ferrel's RFC and disability status.

## Recommendation

Accordingly, the Court **RECOMMENDS** that Ferrel's Motion for Summary Judgment (Dkt. 12) be **GRANTED**, that Defendant's Motion for Summary Judgment (Dkt. 13) be **DENIED**, that the decision of the Commissioner of the Social Security Administration be **VACATED,** and the matter be **REMANDED** for further administrative proceedings consistent with this Memorandum and Recommendation.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude**

**appellate review of factual findings and legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed on October 11, 2022 at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge